IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHB BILTMORE, LLC and MILLENNIUM & COPTHORNE INTERNATIONAL LIMITED,<br><br>       Plaintiffs,<br><br> -against-<br><br>HIGHGATE HOTELS, L.P.,<br><br>       Defendant. | Civil Action No. 1:23-CV-06849-DLC |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

                   PRYOR CASHMAN LLP
                     Todd E. Soloway
                     Bryan T. Mohler
                     Itai Y. Raz
                     Brian S. Hoffman
                  7 Times Square
                  New York, New York 10036-6569
                  (212) 421-4100
                  *Attorneys for Defendant*

Dated: August 6, 2023

Defendant Highgate Hotels, L.P. ("Highgate"), by their attorneys, Pryor Cashman LLP, submits this Memorandum of Law in Opposition to Plaintiffs WHB Biltmore LLC ("WHB") and Millennium & Copthorne International Limited's (together with WHB, "Plaintiffs") "Emergency Motion" for a temporary restraining order.

## ARGUMENT

Plaintiffs ask this Court to issue a TRO that alters the status quo and grants them the ultimate relief sought on each of their claims by removing Highgate as the manager of, the Millennium Biltmore Hotel Los Angeles (the "Hotel"). Notwithstanding that Highgate vehemently disagrees with the bases for Plaintiffs' motion, <u>Highgate has advised Owner that it will exit the Hotel at the close of business today, August 6, 2023</u>, while reserving all rights to seek damages for Owner's improper termination and repudiation of the Hotel Management Agreement ("HMA").[1]

Accordingly, <u>Plaintiffs' motion is moot</u> and should be denied.

For the avoidance of doubt, Plaintiffs' commencement of this lawsuit and application for injunctive relief is based entirely on a pretextual termination of the HMA. Highgate undertook management of the Hotel in January 2023, when the parties entered into a Hotel Management Agreement ("HMA") by which WHB, the Hotel's owner, "engage[d] and turn[ed] over to [Highgate] control and discretion in the operation, direction, management, and supervision of the Hotel, and "grant[ed] to [Highgate] the sole and exclusive right to supervise and direct the management and operation of the Hotel" until December 31, 2028. (*See* HMA at 1 and § 3.1.)[2]

Five months later, in late June 2023, WHB sent Highgate a "Notice of Events of Default" purporting to identify alleged breaches by Highgate under the HMA and threatening to terminate the

---

[1] Highgate informed Owner of its intent to vacate the Hotel (while reserving all of its rights) around 10:00 am ET on Sunday, August 6, 2023. Nevertheless, Owner has not formally withdrawn its motion, necessitating Highgate to file this opposition.
[2] The HMA was submitted under seal as Exhibit B to the Declaration of Alex DeCarvalho ("DeCarvalho Decl.").

HMA. Highgate responded by letter dated July 17, 2023, rejecting WHB's notice and providing detailed factual explanations refuting each of WHB's claimed breaches (the "Highgate Letter"). (*See* Russo Decl. ¶¶ 36-56 & Ex. 1.)[3]

In a rather shocking display of deception, Owner withheld the Highgate Letter from the Court in seeking injunctive relief. The reason for doing so is apparent: the Highgate Letter clearly refutes the basis for the (wrongful) termination.

Among other things, Highgate explained that, contrary to WHB's claims, the Hotel is profitable and on pace to achieve the target gross operating profit in 2023. Highgate also identified that WHB, not Highgate, is responsible for the Hotel's increased operating expenses – including additional asset management and other fees (totaling $1 million in just the first six months of 2023) that WHB began paying itself or its affiliates after Highgate undertook management, decisions by Owner to divert significant revenue streams from the Hotel, leaving over five hundred unpaid invoices totaling approximately $1.04 million from the time Owner was operating the Hotel, and overseeing unlawful labor practices prior to Highgate taking over. (*Id.* at ¶ 17.)

Moreover, as explained in the Highgate Letter, Owner's claims that the Hotel was unprofitable were blatantly false, and Owner's reliance on pre-contract non-binding projections[4] to claim a default are without basis in the HMA or at law given that Owner provided incomplete and inaccurate information during due diligence. (*Id.* at ¶¶ 16-19.)

Without responding to Highgate, Plaintiffs commenced this action and seek, on a TRO, mandatory injunctive relief altering the status quo and awarding them the ultimate relief sought.

---

[3] "Russo Decl." refers to the Declaration of Richard Russo, submitted herewith.
[4] As shown in the projections, which were annexed as Exhibit C to the Declaration of Kit Sung Yam, Highgate disclaimed any representation or warranty based on the figures provided.

Plaintiffs presented to this Court a one-sided, incomplete version of the facts, omitting the Highgate Letter.

WHB's failure to work in good faith with Highgate on a solution to the alleged breaches of the HMA, as well as Plaintiffs' failure to mention or provide this Court with Highgate's responsive letter, demonstrates the pretext behind Plaintiffs' claims. Had Plaintiffs submitted the Highgate Letter on their motion, it would have been immediately evident that they could not satisfy the standard for the imposition of the mandatory injunction they seek and additionally evident that their claims lack any merit.

Based on the wrongful termination, Highgate is compelled to leave the Hotel at the close of business today, while reserving all rights to seek damages related to the improper termination of the HMA. Therefore, Plaintiffs' application for a temporary restraining order and preliminary injunction should be denied as moot.[5] *See, e.g.*, *Am. Freedom Defense Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016) (preliminary injunction is moot and should be denied where conduct sought to be enjoined ceases).

However, if Plaintiffs continue to pursue their application for a temporary restraining order and to the extent one is granted, the Court should direct a bond to be entered by Plaintiffs in the

---

[5] To the extent Plaintiffs assert the Court should nevertheless grant their motion to motion, this, too, fails for several independent grounds. First, by anticipatorily breaching the HMA – and Owner's reliance on agency principles to terminate the HMA is, as Owner concedes, a breach of the HMA – Owner has no right to demand continued performance by Highgate of any post-termination obligations set forth in the HMA. *See Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 457 (S.D.N.Y. 2003) ("Having repudiated and breached its contract … [Plaintiff] cannot now claim relief … in the form of specific performance [of the contract].") Second, Owner does not (and cannot) meet the incredibly high burden attendant to mandatory injunctive relief. *See, e.g.*, *Steak N Shake v. Wilmington Tr., N.A.*, 20-cv-6096 (LJL), 2020 WL 5261223, at *7 (S.D.N.Y. Sept. 3, 2020)) (Liman, J.) ("The movant must make 'a clear showing that [it] is entitled to the relief requested, or [that] extreme or very serious damage will result from a denial of preliminary relief.'") (citing *Tom Doherty Assocs., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 2020), quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)) (alterations in original).

amount of $13,020,000, pursuant to FRCP 65(c) ("The court may issue … a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained). This figure represents the total of the estimated Base Management Fee ($8,313,000) and Incentive Management Fee ($4,710,000) Highgate would have received through the completion of the term of the HMA, using industry-standard analysis to project the fees Highgate would have earned and assuming Highgate was permitted to operate the Hotel in a commercially reasonable manner without undue interference from Owner. (Russo Decl. ¶ 7, 69.)

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for temporary restraining order and preliminary injunction should be denied as moot. To the extent the Court grants Plaintiffs' motion, it is respectfully submitted that a bond should be set at $13,020,000.

**PRYOR CASHMAN LLP**
By:      /s/ Todd E. Soloway
              Todd E. Soloway
              Bryan T. Mohler
              Itai Y. Raz
              Brian S. Hoffman
7 Times Square
New York, New York 10036-6569
(212) 421-4100
*Attorneys for Defendant*